[No. H019019. Sixth Dist. Dec. 28, 2000.]

DINO TOMASSI et al., Plaintiffs and Respondents, v.
JOSEPH SCARFF, as Administrator, etc., Defendant and Respondent;
RELIANCE INSURANCE COMPANY, Movant and Appellant.

GIUSEPINA TOMASSI, Plaintiff and Respondent, v.
JOSEPH SCARFF, Individually and as Administrator, etc., et al.,
Defendants and Respondents;
RELIANCE INSURANCE COMPANY, Movant and Appellant.

1054

**COUNSEL**

Horvitz & Levy, Barry R. Levy, H. Thomas Watson; O'Melveny & Myers, Martin S. Checov and Stuart C. Plunkett for Movant and Appellant.

Katz & Lapides, Robert Jay Katz, Lisa Jeong Cummins; and Laura E. Rasmussen for Plaintiffs and Respondents Dino Tomassi et al.

David R. Finch and Ron Leaf for Plaintiff and Respondent Campbell Towing, Inc.

## OPINION

ELIA, J.—Reliance Insurance Company (Reliance) appeals from an order denying its motion to vacate a judgment in a wrongful death action against its insured, Campbell Towing, Inc. The trial court determined that Reliance lacked standing as an "aggrieved" party within the meaning of Code of Civil Procedure section 663. We agree with the court's ruling and therefore affirm the order.

### Background

Angelo Tomassi, Sr., and Christopher Moreno were aggressive competitors in the tow truck business. Tomassi owned Great America Towing, Inc., while Moreno was a co-owner of Campbell Towing. Animosity had developed between the two over alleged breaches of their noncompetition agreements and other issues. In addition to Moreno's business disputes with Tomassi, Moreno's wife had filed for divorce. Moreno had told her he would commit suicide if she continued with the dissolution proceedings.

On January 11, 1994, Moreno rode his motorcycle to Great America Towing, Inc., and engaged Tomassi in conversation. A heated argument erupted, and Moreno shot Tomassi several times, killing him. Then Moreno went to the pharmacy where his wife worked and shot himself to death.

Tomassi's wife and sons sued Moreno's estate and Campbell Towing for wrongful death and negligent infliction of emotional distress.[1] In January 1995 Campbell Towing tendered its defense to Reliance, and extensive correspondence took place over the next two years. During that period counsel for Campbell Towing kept Reliance informed of developments in the litigation and repeatedly renewed its requests for a defense. Reliance, however, continued to reject the tender on the ground that even if there was potential liability of Campbell Towing, it fell outside the coverage of the liability policy. Meanwhile, the litigation proceeded through active discovery, discovery orders and sanctions, and an unsuccessful motion for summary judgment.

Faced with Reliance's refusal to defend and the impending trial set for February 9, 1998, Campbell Towing entered into an agreement with plaintiffs, which limited damages but guaranteed plaintiffs a recovery of at least $275,000. As defense counsel explained to Reliance, "The risk of a multi-million dollar judgment, with the resulting probability of Campbell Towing,

---

[1] The cause of action for negligent infliction of emotional distress was predicated on the witnessing of Tomassi's death by his son David.

Inc.'s bankruptcy, were unacceptable risks for my client to endure on its own." The parties thereafter waived jury trial and informed the court that trial would take one day or less. Plaintiffs submitted a trial brief asserting liability of Campbell Towing on the grounds of negligent failure to control Moreno and negligent failure to warn Tomassi that Moreno had threatened to kill him. Campbell Towing did not submit a trial brief.

The half-day trial on February 9, 1998, proceeded without a court reporter, by agreement of the parties. Plaintiffs' witnesses were not cross-examined and certain offers of proof were made without objection. At the conclusion of the trial, the court found Campbell Towing liable for wrongful death and negligent infliction of emotional distress.

In its statement of decision following the trial, the court stated that Campbell Towing had negligently failed to exercise reasonable care to control the conduct of Moreno and negligently failed to warn Tomassi of Moreno's threats. The court specifically found that the corporate officers, directors, and managerial employees of Campbell Towing knew of at least four separate business disputes between the company and its rival, Great America Towing. They also knew of Moreno's "volatile personality" and his "hatred" of Tomassi. The hatred and threats against Tomassi's life had resulted from the antagonism that had developed between the two and from Moreno's belief that Tomassi had breached an agreement not to compete. The court further found a "special relationship" between Campbell Towing and Moreno based on his employment, and between Campbell Towing and Tomassi based on their business dealings. The shooting was "an outgrowth of, and incidental to" Moreno's employment at Campbell Towing. Citing *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], the court determined that Campbell Towing's corporate officers, directors, and managerial employees should have recognized the danger to Tomassi and taken reasonable steps to protect him from this foreseeable event. The ensuing judgment ordered Campbell Towing to pay the Tomassis a total of $4,031,170.

On March 18, 1998, the day after the court issued its statement of decision, Campbell Towing filed a complaint against Reliance, seeking declaratory relief on the issue of coverage and damages for breach of contract and breach of the implied covenant of good faith and fair dealing. Reliance answered the complaint and asserted numerous affirmative defenses.

On May 20, 1998, Reliance moved for an order vacating the judgment obtained by the Tomassi family against Campbell Towing. Citing Code of

Civil Procedure section 663,[2] Reliance asserted that the court's legal conclusions were "not supported by the facts." Campbell Towing, it argued, had not had a duty to control Moreno or warn Tomassi because there was no "special relationship" as contemplated by the courts applying the *Tarasoff* decision. The Tomassis and Campbell Towing opposed Reliance's motion on the grounds that it was untimely, Reliance was not "aggrieved" by the judgment within the meaning of section 663, and the judgment was legally correct and supported by the facts. The court denied the motion on the first ground, that Reliance was not aggrieved by the judgment.

### Discussion

Upon the motion of "the party aggrieved," section 663 permits a court to set aside a judgment that is "based upon a decision by the court," if there is an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts."[3] An aggrieved party is one "whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' " (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953]; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 13 [84 Cal.Rptr.2d 715].)

In denying the motion to vacate, the trial court found that Reliance's interests did not satisfy the *Carleson* standard: "The *possibility* that Reliance will be bound by the judgment does not satisfy this standard, or the res judicata exception thereto. The judgment in the liability action collaterally estops the insurer only on issues necessarily adjudicated in the liability action, i.e., the insured's liability and the amount of the injured party's damages. It does not bind the insurer on coverage issues. . . . [¶] Likewise, Reliance's incurring of litigation costs as a result of Campbell Towing's recently filed coverage action is not a substantial right or interest affected by the judgment, and is at most a nominal consequence of the judgment. Reliance clearly and repeatedly denied coverage under their policy and refused to defend this action. Reliance's real interest (paying under the

---

[2]All further statutory references are to the Code of Civil Procedure.

[3]Section 663 states: "A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected. [¶] 2. A judgment or decree not consistent with or not supported by the special verdict."

policy) will be affected only if coverage is found. Until then, Reliance's rights have not been injuriously affected by the judgment."

Reliance contends that its standing is "obvious" because the judgment was the "initial essential step" in a "scheme by [the parties] to have Reliance foot the bill for the damage caused by Moreno's murderous rampage." The success of Reliance's position depends on two assumptions: that the underlying judgment was procured through collusion; and that the judgment will bind Reliance in the subsequent lawsuit brought against Reliance by Campbell Towing.

Reliance cites the general rule that "[a] person who would be bound by the doctrine of res judicata, whether or not a party of record, is a party sufficiently aggrieved to entitle him to appeal." (*Leoke v. County of San Bernardino* (1967) 249 Cal.App.2d 767, 771 [57 Cal.Rptr. 770]; *In re Lauren P.* (1996) 44 Cal.App.4th 763, 771 [52 Cal.Rptr.2d 170].) However, Reliance will not necessarily be bound by the finding that Campbell Towing was liable. An insurer that has received notice of the action against its insured but refuses to defend will be bound by the resulting judgment on all issues material to liability, in the *absence* of fraud or collusion. (*Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.* (1959) 51 Cal.2d 558, 562 [334 P.2d 881]; *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240 [178 Cal.Rptr. 343, 636 P.2d 32].) In the pending lawsuit by Campbell Towing against Reliance, Reliance will have the opportunity to assert not only that no coverage existed but also that the liability judgment was a product of collusion between Campbell Towing and the Tomassis.[4] (Cf. *Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 517, 530 [42 Cal.Rptr.2d 295]; *Andrade v. Jennings* (1997) 54 Cal.App.4th 307, 325-326 [62 Cal.Rptr.2d 787]; *Xebec Development Partners, Ltd. v. National Union Fire Ins.* (1993) 12 Cal.App.4th 501, 549 [15 Cal.Rptr.2d 726]; see also *Sunseri v. Camperos Del Valle Stables, Inc.* (1986) 185 Cal.App.3d 559, 561 [230 Cal.Rptr. 23].) If Reliance is successful on this issue, collateral estoppel will not be applied to establish Campbell Towing's liability.

We thus agree with the trial court's determination that Reliance is not aggrieved in this procedural setting.[5] The effect of the Tomassi-Campbell Towing judgment on Reliance is only indirect and contingent, not direct and

---

[4]Indeed, Reliance pleaded collusion as one of its affirmative defenses to the Campbell Towing complaint.

[5]The cases cited by Reliance do not convince us otherwise. In *County of Alameda v. Carleson, supra,* 5 Cal.3d 730, for example, the welfare recipients' interest in receiving AFDC (Aid to Families With Dependent Children) benefits was directly and immediately affected by the outcome of the litigation between the parties. No further proceedings were necessary for the impact of the judgment to be felt. *Lipson v. Jordache Enterprises, Inc.* (1992)

immediate. Reliance is therefore not aggrieved within the meaning of section 663, and the trial court did not err in denying the motion to vacate the judgment.

### Disposition

The order is affirmed.

Cottle, P. J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 2001.

---

9 Cal.App.4th 151 [11 Cal.Rptr.2d 271] is also distinguishable. There the insurer, after initially refusing the defense, agreed to defend against the amended complaint, which had added new causes of action potentially covered by the policy. However, through no fault of the insurer, it received the amended complaint after trial had been held and judgment entered. The appellate court reversed the order denying the insurer's motion to vacate the judgment under section 473. The court noted that "something seem[ed] amiss" in the circumstances, particularly the last-minute stipulation to amend the complaint and the "extremely perfunctory" trial, which appeared to be a substitution for a stipulated judgment. (9 Cal.App.4th at p. 158.) Here, by contrast, it was not procedural circumstances that prevented Reliance from defending the lawsuit but its own decision to reject the tender of the defense based primarily on lack of coverage. Whether there something was "amiss" in the trial of this case may be argued in Reliance's defense to Campbell Towing's action against it.

This court's recent decision in *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383 [100 Cal.Rptr.2d 807] is also distinguishable. There we held that Reliance was entitled to intervene to protect its own interests. Here Reliance made no attempt to intervene in the action, but instead refused to become involved until an unfavorable judgment had been reached against Campbell Towing.